IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES TATE, #M27187, | |
| Plaintiff, | Case No. 23-cv-03493-SPM |
| v. | |
| LATOYA HUGHES, MELVIN HINTON, L. LINDGREN, BRITTINI ROLDAN, CATHY MCCLURE, MS FAULK, and DOUG STEPHENS, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Tate, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Dixon Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Pinckneyville Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE FIRST AMENDED COMPLAINT

Plaintiff alleges that following a parole violation, he was taken to the Northern Reception

and Classification Center (NRC)/ Stateville Correctional Center on April 28, 2023. (Doc. 37-1, p. 10; Doc. 37-3, p. 7). At NRC, he was given a psychiatric diagnostic evaluation, designated as seriously mentally ill, and referred to a residential housing unit (RTU) within IDOC by Psychiatrist Lindgren. On June 7, 2023, he was transferred to Pinckneyville Correctional Center (Pinckneyville) and placed in general population, despite the RTU referral. (Doc. 37-1, p. 10; Doc. 37-3, p. 2). Once at Pinckneyville, Plaintiff told an internal affairs officer that he was not supposed to be at Pinckneyville in a general population setting due to his mental illnesses. (*Id.* at p. 6). Plaintiff told the officer that he was not in a gang, and he feared for his safety. (*Id.*).

Plaintiff was in a depressed state of mind and had thoughts of hurting himself in order to get help. He was taken to the health care unit and treated by Mental Health Professional Faulk. Faulk told him to he was weak and that if he cut himself, he should make sure to "hit [his] A C so [he] could bleed out and then [she] would tell the nurses [he was] ready to receive medical attentions." (*Id.*).

On June 9, 2023, Plaintiff was placed in a cell with a cellmate. (Doc. 37-3, p. 3). Plaintiff and his were cellmate fought. Plaintiff yelled for help but was ignored. Staff came and sprayed both inmates with pepper spray. Plaintiff was taken to the health care unit to treat his injuries. He had a swollen mouth and a knot on his forehead. Plaintiff states that because of his RTU status, staff knew there was a risk he would get hurt or hurt others if placed in general population. (*Id.*).

Plaintiff was placed in segregation for twenty-five days. (Doc. 37-3, p. 4). During this time, he attempted suicide by cutting his arms and was taken to the health care unit. Plaintiff met with mental health and asked for medical attention for his arms. Lieutenant McDonald and Faulk told Plaintiff he would not receive medical attention for his injuries. (*Id.*). Faulk placed Plaintiff on crisis watch. (*Id.* at p. 5). The next day, Plaintiff asked for medical treatment from Correctional Officer Mcvay and Sergeant Simpson. He showed them his arms, and they called the health care

unit. (*Id.*).

When Mental Health Professional McClure made her rounds, Plaintiff asked her why he was at Pinckneyville when he was designated as needing RTU level of care. McClure told Plaintiff that the transfer coordinator in Springfield, Doug Stephens, had made a mistake and that everyone was working together to have Plaintiff "back to R.T.U. level of care." (*Id.*).

It is not clear how many days Plaintiff spent at Pinckneyville, but by June 27, 2023, Plaintiff had been transferred to Dixon Correctional Center, which has a special treatment center and a psychiatric unit.[1] (Doc. 37-1, p. 6, 10).

## PRELIMINARY DISMISSALS

All claims against Psychiatrist Lindgren and McClure are dismissed. In the First Amended Complaint, Plaintiff states that McClure, a mental health professional, told him that he was mistakenly placed at Pinckneyville and that staff members were working to have Plaintiff transferred to a facility with RTU level care. (Doc. 37-3, p. 5). He asserts that Psychiatrist Lindgren conducted a psychiatric diagnostic evaluation of him at NRC. (*Id.* at p. 7). Plaintiff does not describe any conduct on the part of Lindgren or McClure that amounted to a constitutional violation. Accordingly, he has failed to state a claim against both defendants.

Any claims that Plaintiff is attempting to bring regarding his placement in a cell with a cellmate and subsequent physical altercation are also dismissed. Other than asserting a generalized risk of harm by being in general population, Plaintiff does not associate this specific incident with any named defendant. (*See* Doc. 37-3, p. 3, 6).

The Court also dismisses Plaintiff's Fourteenth Amendment due process claim for placement in segregation without a disciplinary ticket or hearing on June 9, 2023. (Doc. 37-3, p.

---

[1] *See* https://idoc.illinois.gov/facilities/allfacilities/facility.dixon-correctional-center.html (last visited June 5, 2024).

4). Again, Plaintiff does allege that any of the name defendants were personally involved in his transfer to segregation without due process of law. Additionally, placement in segregation for only twenty-five days is not a length of time that amounts to a liberty deprivation that requires due process protections. *See Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 nn. 2-3 (7th Cir. 2009)); *Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (finding that 78 days in alleged deplorable conditions was not a "atypical and significant hardship" as compared to prison life generally).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**  Eighth Amendment deliberate indifference claim against Hughes, Hinton, Stephen, and Roldan for improperly placing Plaintiff at Pinckneyville in general population.

**Count 2:**  Eighth Amendment deliberate indifference claim against Faulk for denying Plaintiff treatment for his mental and physical health.

**Count 3:**  Fourteenth Amendment equal protection claim against Defendants.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

## Count 1

To successfully state an Eighth Amendment claim, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A claim does not rise to the level of an Eighth Amendment violation,

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

however, unless the alleged conduct was "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996). [N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

Here, Plaintiff has failed to state an Eighth Amendment claim for his improper placement at Pinckneyville. Plaintiff's description of the conduct on the part of Defendants Stephen, Hinton, and Roldan amounts to only negligence. Plaintiff repeatedly states that Defendants had a duty to keep him safe and breached that duty, which is not sufficient to state a claim for a constitutional deprivation. Plaintiff asserts that Transfer Coordinator Doug Stephens failed his duties by allowing him to be housed in a regular prison setting. (Doc. 37-3, p. 2). Likewise, Dr. Melvin Hinton, the chief of mental health, "neglected his duties in allowing [Plaintiff] to be placed in general population." (*Id.* at p. 3). Plaintiff asserts that Dr. Hinton's actions show that "he didn't care or just plain negligence." (*Id.*). Brittini Roldan failed to competently review his paperwork. (*Id.*). Plaintiff goes on to state that he was told by Mental Health Professional Cathy McClure that his placement in Pinckneyville was "a mistake" made by Doug Stephens and that staff members were working together to have Plaintiff placed in an RTU level of care facility. (*Id.* at p. 5). Plaintiff was then transferred to an appropriate facility within three weeks of his arrival at Pinckneyville. These facts do now allow a plausible inference of deliberate or criminal reckless conduct on the part of Defendants Stephens, Hinton, and Roldan, only that negligence, maybe even gross negligence, was committed, staff was alerted to the housing error, and then reacted to correct the mistake. Accordingly, Count 1 is dismissed as to Stephens, Hinton, and Roldan.

Count 1 is also dismissed against Latoya Hughes. Plaintiff states that as the director of

IDOC, Hughes is responsible for making sure that IDOC runs correctly. (Doc. 37-3, p. 2-3). Plaintiff states that she is "liable for its overall actions." He alleges that Hughes received an email about his improper placement and did nothing to correct the error. Plaintiff asserts that this amounts to deliberate indifference.

A single email to the director of IDOC is not sufficient to support personal liability. *See, Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (state officials "do not have a free-floating obligation to put things to rights," simply sending an official a letter does not expose them to Section 1983 liability for failing to respond, and IDOC officials are entitled to delegate to the prison's medical staff the provision of adequate care). The email is also insufficient to demonstrate that Hughes knew about any ongoing constitutional violations and facilitated it, approved it, condoned it, or turned a blind eye to it. Finally, the doctrine of *respondeat superior* does not apply to actions filed under Section 1983 and therefore, Hughes cannot be held liable for the errors of her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Accordingly, Count 1 is dismissed as to Hughes.

**Count 2**

Plaintiff claims that when he was taken to see Mental Health Professional Faulk for depression and thoughts of self-harm, she did not provide him mental health care but instructed him on how to effectively cut his arms. (Doc. 37-3, p. 2). On a separate occasion, after Plaintiff had cut his arms, Faulk denied him medical treatment and harassed Plaintiff by making racist remarks and telling him to kill himself. (*Id.* at p. 5). These allegations are sufficient to state an Eighth Amendment claim against Faulk.

**Count 3**

Plaintiff alleges that while interacting with Faulk she would say racist comments to him such as "bring back slavery" and "black people don't deserve to live in America." (Doc. 37-3, p.

5). Plaintiff asserts that Faulk failed to provide him mental health and medical treatment because of his race. This is sufficient for Count 3 to proceed against Faulk. *See Williams v. Dart,* 967 F. 3d 625, 637 (7th Cir. 2020) ("The Equal Protection Clause of the Fourteenth Amendment prohibits intentional racial discrimination.").

Count 3 is dismissed as all other Defendants. Plaintiff's assertion that his placement at Pinckneyville for less than three weeks was a violation of the Equal Protection Clause is conclusory and not support by any facts in the First Amended Complaint. Accordingly, Plaintiff's allegations relating to equal protection or discrimination and his transfer to Pinckneyville are insufficient as pled.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a third motion asking the Court to recruit counsel on his behalf. (Doc. 38). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

Again, Plaintiff has not provided sufficient information for the Court to determine he has made a reasonable effort to obtain counsel on his own prior to filing his motion. In denying Plaintiff's previous motions for recruitment of counsel, Plaintiff was instructed that if he choose to move for recruitment of counsel at a later date, then he should "include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation." (Doc. 34, p. 5). Plaintiff states that he has written several letters to various attorneys, but he only provides the declination letters from two law firms. Plaintiff also provides a copy of a letter and envelope marked "return to sender" sent to an attorney that

never received his correspondence. Plaintiff does not provide the names and addresses of any other lawyer he has contacted. Because he has only provided information for two law firms he has successfully contacted, he has failed to follow the Court's directions and made reasonable efforts to recruit counsel on his own prior to renewing his motion.

The Court also finds that Plaintiff is capable of representing himself. Plaintiff states that he is incapable of proceeding unrepresented because the litigation is complex, he has a learning disability, and he also has limited access to the law library. Despite these concerns, he is able to litigate this case pro se, at least for now. His First Amended Complaint has survived screening, and his filings demonstrate an ability to construct coherent sentences and relay information to the Court. Once discovery on the merits has commences, if Plaintiff has significant difficulty, he may refile his motion. For these reasons, the third motion for recruitment of counsel is **DENIED**. (Doc. 38).

### DISPOSITION

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED without prejudice. COUNT 2** will proceed against Faulk. **COUNT 3** will proceed against Faulk and is **DISMISSED without prejudice** as to all other Defendants. All claims against Hughes, Hinton, Lindgren, Roldan, Stephens, and McClure are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants on the docket.

Because Plaintiff claims are related to his mental and physical health, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Faulk the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is directed to mail these forms, a copy of the First Amended Complaint and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant Faulk is **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 6, 2024**             *s/Stephen P. McGlynn*
                                     **STEPHEN P. MCGLYNN**
                                     **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.