IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES TATE,<br><br>                             **Plaintiff,**<br><br>v.<br><br>SYDELLE FULK,<br><br>                             **Defendant.** | Case No. 23-cv-03493-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff James Tate initiated this action pursuant to 42 U.S.C. § 1983 while an inmate of the Illinois Department of Corrections (IDOC) alleging violations of his constitutional rights. In the First Amended Complaint, Plaintiff alleges that although he was designated as seriously mentally ill and referred to a residential housing unit, on June 7, 2023, he was transferred to Pinckneyville Correctional Center (Pinckneyville) and placed in general population. While at Pinckneyville, Plaintiff was in a depressed state of mind and had thoughts of hurting himself. The timeline of events is not entirely clear, but at some point, he was taken to the health care unit and treated by Defendant Mental Health Professional Sydelle Fulk, who told him he was weak and that if he cut himself, he should make sure to "hit [his] A C so [he] could bleed out and then [she] would tell the nurses [he was] ready to receive medical attentions." (Doc. 37-3, p. 2). A few days after his transfer, Plaintiff was involved in a physical fight with his cellmate and placed in segregation. While, in segregation he attempted suicide by cutting his arms and was taken to the health care unit. Plaintiff was seen again by Defendant Fulk, who told Plaintiff he would not receive medical attention for his injuries. Fulk not only denied Plaintiff medical treatment but also

harassed him by making racist remarks and telling him to kill himself. (*Id.* at p. 5). Fulk then placed Plaintiff on crisis watch without providing him medical care. Following a merit review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff is currently proceeding on the following claims:

> **Count 2:** Eighth Amendment deliberate indifference claim against Fulk for denying Plaintiff treatment for his mental and physical health.
>
> **Count 3:** Fourteenth Amendment equal protection claim against Fulk.

(Doc. 41).

This matter is before the Court on a motion for summary judgment on the issue of exhaustion filed by Defendant Sydelle Fulk. (Doc. 55). Plaintiff has filed responses in opposition. (Doc. 61, 63, 65, 67). For the following reasons, the motion for summary judgment will be granted.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F. 3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

### III. Grievance Procedures

As an inmate in the custody of IDOC at the time of filing, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer (CAO) within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board (ARB). *See* 20 ILL. ADMIN.

CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO, and copies of "the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. See *Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

The only grievance at issue in this case is Grievance #232557, dated June 28, 2023. (Doc. 67, p. 3). In Grievance #232557, Plaintiff grieves that on June 9, 2023, a correctional officer claimed that Plaintiff had a fight with his cellmate and was smoking. Plaintiff claims that these allegations were "made up [and] a lie." He writes that he was issued a disciplinary ticket and placed in segregation. While in segregation, he began cutting himself and "banging his head…" He showed Mental Health Professional (MHP) Ms. S cuts on his arms, and he was eventually taken to the health care unit. He states that he was not seen by a nurse or other medical staff for his injuries. Plaintiff alleges in the grievance that he was told that he wants to die "so die." He states that Defendant Fulk came into the room, but he did not talk to Defendant Fulk because she "was talking to [him] unkind and rude." Then he was taken to a crisis cell. (*Id.* at p. 4). In his request for relief, Plaintiff asks for the disciplinary ticket to be removed from his record, for his A-grade status to be reinstated, to be removed from "confinement," for proper mental health treatment, and to receive compensation for the mental stress he has endured. (*Id.* at p. 3).

On August 4, 2023, the grievance officer recommended for Plaintiff's grievance to be denied because he was never issued a disciplinary ticket. (Doc. 67, p. 2). The chief administrative officer concurred in the recommendation on August 8, 2023, and Plaintiff appealed the decision on August 13, 2023. (*Id.*). The ARB responded to the appeal on January 18, 2024, stating that the disciplinary report had been expunged. (Doc. 56-1, p. 11).

Plaintiff appears to be arguing that Grievance #232557 serves to exhaust his claims against Defendant Fulk because the grievance was fully exhausted at the time he filed the First Amended Complaint on April 2, 2024. (Doc. 63, 67). It is true that when an inmate amends his complaint to raise a new claim, the inmate may proceed on the new claim if he exhausted his administrative remedies after filing his original compliant, but prior to 'the filing of the amended complaint.'" *Lofquist v. Cecil,* No. 20-cv-169-RJD, 2022 WL 622005, at *3 (quoting *Barnes v. Briley,* 420 F. 3d 673, 678 (7th Cir. 2005)). This, however, is not the situation here.

Plaintiff initiated this case on October 3, 2023, naming Defendant Fulk and others, and asserting the same allegations as stated in the First Amended Complaint – that he was improperly placed in general population at Pinckneyville, mistreated and harassment by staff, and denied mental and physical health care. The Court dismissed the original Complaint for failure to state a claim and granted Plaintiff leave to amend. (Doc. 34). Although the First Amended Complaint was filed after Grievance #232557 had received a final determination by the ARB, Plaintiff was required under the PLRA to have administratively exhausted his remedies when he first brought the suit on October 3, 2023. *See Hoban v. Anderson,* 688 F. App'x 385, 389 (7th Cir. 2017); *Thompson v. Swisher,* No. 19-cv-1058-RJD, 2022 WL 2817438, at *4 (S.D. Ill. 2022) (holding that the plaintiff had not exhausted where the original and amended complaint related to the same incident). Because Plaintiff filed this case before receiving a response from the ARB for Greivance #232557, and there is no evidence that Plaintiff otherwise properly exhausted his administrative remedies regarding the claims in this case, the motion for summary judgment is granted.

## DISPOSITION

For the reasons provided, the Court **GRANTS** the motion for summary judgment (Doc. 55) filed by Defendant Sydelle Fulk. **COUNTS 2** and **3** and this **ENTIRE CASE** are **DISMISSED**

**without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal in forma pauperis should set forth the issues he plans to present on appeal. See FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. See FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger,* 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza,* 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien,* 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: September 2, 2025**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**